### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LASTARR N. BURKE, | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil No. 25-3933-BAH |
| ALLY FINANCIAL INC., | * | |
| Defendant. | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

### <u>MEMORANDUM OPINION</u>

Plaintiff Lastarr N. Burke ("Burke" or "Plaintiff") brought suit against Ally Financial, Inc. ("Ally" or "Defendant") alleging several claims in connection with the repossession of Burke's vehicle. ECF 3. Pending before the Court is Ally's motion to dismiss (the "Motion"). ECF 6. Burke filed an opposition, ECF 8, and Ally filed a reply, ECF 9. All filings include memoranda of law, and the complaint includes exhibits.[1] The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). Accordingly, for the reasons stated below, Ally's Motion is **GRANTED**.

### I.    BACKGROUND

Burke alleges that on February 9, 2024, she "entered into a retail installment sales contract" with Ally "to finance the purchase of a 2019 Kia Sorento." ECF 3, at 3 ¶ 4. On May 8, 2024, Ally sent Burke a "'Notice of Intent to Repossess' stating repossession could occur after May 21, 2024 for alleged missed payments in March and April of 2024." *Id.* ¶ 5. On July 31, 2024, Ally sent Burke a "Notice of Charged Off Account . . . in the amount of $24,842.01 and ceased active

---

[1] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

collection communications." *Id.* ¶ 6. According to Burke, after this notice, Ally "stayed silent." *Id.* ¶ 7. However, on June 20, 2025, Burke alleges that Ally repossessed Burke's vehicle in New York City, where Burke was traveling "with her four young children to visit family . . . for a family funeral." *Id.* ¶ 8.

Burke brings nine claims including: breach of contract (Count I); violation of Md. Code Ann., Com. L. § 12-1021 (Counts II, III, and IV); wrongful repossession under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. and Uniform Commercial Code ("UCC") (Count V);[2] violation of the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693 et seq. (Count VI); invasion of privacy (Count VII); unfair and deceptive trade practices in violation of the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. L. § 13-101 et seq. (Count VIII); and intentional infliction of emotional distress ("IIED") (Count IX).

Burke originally filed her complaint in the Circuit Court for Prince George's County. ECF 1 (notice of removal). Ally removed the case to federal court, *see id.*, and filed a motion to dismiss. ECF 6. The Motion is now ripe for resolution.

## II.    **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) governs dismissals for failure to "state a claim upon which relief can be granted." In considering a motion under this rule, courts discount legal conclusions stated in the complaint and "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Ashcroft v. Iqbal*, 556 U.S.

---

[2] Burke asserts in her opposition that Count V includes a claim under the FDCPA and the Maryland Consumer Debt Collections Act ("MCDCA"), and that Count VI is a UCC claim. ECF 8, at 4–5. It is clear from the complaint, however, that Burke brings Count V under the FDCPA and UCC and does not bring a claim under the MCDCA. *See* ECF 3, at 6. "It is well-established that parties cannot amend their complaints through briefing or oral advocacy." *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013). Thus, the Court will analyze the complaint as it is pled.

662, 678 (2009). A court then draws all reasonable inferences in favor of the plaintiff and considers whether the complaint states a plausible claim for relief on its face. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

Courts may, at the motion to dismiss stage, consider "documents attached to the complaint, 'as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.'" *Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019) (quoting *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). A document is "integral" when "its very existence, and not the mere information it contains, gives rise to the legal rights asserted." *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis omitted). As an example, "documents that 'constitute the core of the parties' contractual relationship' have been found to be integral in a breach of contract dispute." *Fisher v. Maryland Dep't of Pub. Safety & Corr. Servs.*, Civ. No. JFM-10-0206, 2010 WL 2732334, at *2 (D. Md. July 8, 2010) (quoting *Walker v. S.W.I.F.T. SCRL,* 517 F. Supp. 2d 801, 806 (E.D. Va. 2007)). Here, Burke incorporates into the complaint several exhibits, which Ally does not contest the authenticity of. *See* ECF 3, at 13–43. The Court will consider some of

3

these exhibits in resolving the Motion. *See Gray Ray Post 220, Inc. v. Nationwide Mut. Ins. Co.*, Civ. No. PX-22-01544, 2022 WL 16700577, at *2 n.1 (D. Md. Nov. 3, 2022) ("The Court may consider the contract at the heart of the dispute as integral to the Complaint and authentic." (citations omitted)); *see also Bochenski v. M & T Bank*, Civ. No. ELH-14-1031, 2015 WL 1040281, at *14 n.15 (D. Md. Mar. 10, 2015) (considering 20 exhibits attached to the complaint in resolving a motion to dismiss where the exhibits were incorporated into the complaint and helped "to decipher plaintiff's factual allegations").

Because Plaintiff brings this suit pro se, the Court must liberally construe her pleadings, holding them to a less stringent standard than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). This leniency has its limits, though. "A court may not construct the plaintiff's legal arguments for h[er], nor is a district court required to recognize 'obscure or extravagant claims defying the most concerted efforts to unravel them.'" *Runge v. Barton*, No. CIVA 6:08-0231-GRA, 2009 WL 3245471, at *1 (D.S.C. Oct. 2, 2009) (first citing *Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993), then quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir. 1985)), *aff'd*, 368 F. App'x 361 (4th Cir. 2010).

## III.   ANALYSIS

### A.   Breach of Contract (Count I)

Burke alleges that Ally "breached the retail installment sales contract by repossessing the vehicle without proper notices, failing to return Plaintiff's property promptly, and otherwise failing to comply with the contract terms." ECF 3, at 4 ¶ 31. Burke also contends that Ally "breached the contract by storing Plaintiff's personal property approximately five hours away from [her] Maryland residence, effectively preventing retrieval and imposing an undue burden." *Id.* ¶ 34. Finally, Burke alleges that Ally failed to "initiate arbitration as required under the contract to resolve disputes regarding the vehicle and account." *Id.* ¶¶ 32–34.

4

In Maryland, "to prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651 (Md. 2001). "At the pleading stage, 'a plaintiff need only allege the existence of a contractual obligation owed by the defendant to the plaintiff, and a material breach of that obligation by the defendant.'" *Brown v. Bank of Am., N.A.*, Civ. No. PX-21-02334, 2022 WL 2193286, at *3 (D. Md. June 17, 2022) (citing *RRC Ne., LLC v. BAA Md., Inc.*, 994 A.2d 430, 442 (Md. 2010)). "More particularly, in Maryland, the plaintiff must aver with 'certainty and definiteness' some facts that reflect the 'contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by defendant.'" *Id.* (quoting *Polek v. J.P. Morgan Chase Bank, N.A.*, 36 A.3d 399, 416 (Md. 2012)).

Ally argues that Burke fails to point to any provisions of the retail installment sales contract that would establish a breach of contract claim. ECF 6-1, at 4. With respect to the repossession, Burke alleges that a breach of contract occurred because "[n]o new 10-day notice was sent . . . before the June 20, 2025 repossession." ECF 3, at 3 ¶ 9. But Burke does not allege that any such notice was contractually obligated, nor does she point to any provision of the contract compelling notice. Indeed, the contract provides: "[u]pon your default, we may take (repossess) the Vehicle from you as long as we do so peacefully. We do not need to go to court to repossess the vehicle." *Id.* at 14. Burke alleges she was sent a "Notice of Intent to Repossess" noting that the vehicle could be repossessed and explaining why. *Id.* at 3 ¶ 5. Burke fails to allege that a *renewed* notice was required before repossession and cannot bring a breach of contract claim on this basis.

As to Burke's personal property, the contract provides that upon repossession, "[i]f any personal property is in the Vehicle, we will store it for you at your expense. If you do not pick up your personal property, we will sell it if the law allows us to do so." ECF 3, at 14. And while

Burke alleges that Ally "failed to safeguard or return promptly" her possessions and made "retrieval extremely difficult," she does not assert that Ally was required under the contract to do either of these things. ECF 3, at 3 ¶¶ 12–13. She thus fails to plausibly allege breach of contract on this ground.

Finally, Burke alleges that she "request[ed] that Defendant initiate arbitration . . . to resolve disputes regarding the vehicle and account," and contends that Ally failed to do so despite being "required" to "under the contract." ECF 3, at 4 ¶ 32. The arbitration provision in the contract provides: "Either you or we may require any Claim to be arbitrated . . . ." *Id.* at 15. As Ally correctly points out, the language in the contract refutes any plausible inference that Ally was contractually obligated to initiate arbitration for Burke. Rather, Burke could have elected to arbitrate this dispute if she wished, but no provision requires Ally to do so on her behalf, even if asked. *See* ECF 3, at 15 ("Either you or we may require any Claim to be arbitrated . . . ."). Burke's breach of contract claim is thus dismissed. *Cf. Woodrow v. Vericrest Fin., Inc.*, Civ. No. AW-09-1612, 2009 WL 4348594, at *4 (D. Md. Nov. 30, 2009) (finding no breach of contract claim where the loan agreement did not contain any provisions requiring the alleged obligations).

**B.      Violation of Md. Code Ann., Com. L. § 12-1021 (Counts II, III, and IV)**

The Maryland Credit Grantor Closed End Credit Provisions ("CLEC"), which includes § 12-1021 of the Commercial Law article, "establishes notice and other detailed procedural requirements for the repossession and sale of collateral." *McDaniels v. Westlake Servs., LLC*, Civ. No. ELH-11-1837, 2014 WL 556288, at *2 (D. Md. Feb. 7, 2014) (citing Com. L. § 12-1021). In Counts II, III, and IV, Burke alleges that Ally violated § 12-1021(c), (e), and (j) for failing to provide an updated written notice 10 days prior to repossession and failing to provide sufficient notice after the sale of the repossessed vehicle. ECF 3, at 5–6.

6

Burke has no claim under § 12-1021(c). "Under the CLEC, there is no requirement that a Notice of Intent to Repossess be sent." *Wiley v. Reg'l Acceptance Corp.*, Civ. No. TDC-14-2709, 2015 WL 2127222, at *5 (D. Md. May 4, 2015). Instead, the statute provides that "at least 10 days before a credit grantor repossesses any tangible personal property, the credit grantor *may* serve a written notice on the consumer borrower of the intention of the credit grantor to repossess the tangible personal property." Com. L. § 12-1021(c) (emphasis added). Notice is discretionary. Even so, Burke's allegations make clear that Ally *did* provide the requisite notice, as Burke alleges that she received a notice of intent to repossess on May 8, 2024, over one year prior to repossession of the vehicle on June 20, 2025. ECF 3, at 3 ¶¶ 5, 8. Burke argues that "[e]ven if pre-repossession notice is discretionary under § 12-1021(c), once a creditor elects to give notice, the notice must not be stale, misleading, or misleadingly incomplete." ECF 8, at 4. To the extent she plausibly alleges facts to support that the notice she received meets this description, Burke provides no authority, whether in the statute or case law, for her proposition. Accordingly, her claims under § 12-1021(c) are dismissed. *See* ECF 3, at 4–5 (alleging violation of Com. L. § 12-1021(c) under Counts II and III).

Under Count III, Burke contends that Ally violated § 12-1021(e) and (j) because the "post-repossession notice was untimely, misleading, and/or inaccurate." ECF 3, at 5 ¶ 45. The relevant language of the statute provides that "[w]ithin 5 days after the credit grantor repossesses the tangible personal property the credit grantor shall deliver to the consumer borrower . . . a written notice which briefly states . . . [t]he right of the consumer borrower to redeem the tangible personal property, and the amount payable for it," "[t]he rights of the consumer borrower as to a resale," and "[t]he exact location where the tangible personal property is stored and the address where any payment is to be made." Com. L. § 12-1021(e). "[A]t least 10 days before the sale [of repossessed

7

property], the credit grantor shall notify the consumer borrower in writing of the time and place of the sale." *Id.* § 12-1021(j).   The allegations reflect that Ally "sent an Intent to Sell notice dated June 25, 2025, to Plaintiff's home address," within the requisite five-day time period after repossession on June 20, 2025. ECF 3, at 3 ¶ 14.  Burke does not allege that the notice lacks any requisite information and, indeed, the copy of the notice attached to the complaint complies with the statutory requirements.  It includes Burke's right to redeem and amount owed, *see* ECF 3, at 19 ("As of the date of this letter, you can get your vehicle back by paying the total amount" of $25,282.01); Burke's rights as to a resale, *see id.* ("The money that we get from a sale (after paying our costs) will reduce the amount you owe. If we get less money than you owe, you will still owe us the difference."); the location where the vehicle was stored, *id.* at 20 ("Island Recovery Solutions Inc., 946 W Main St, Riverhead, NY, 11901-2820"); and the address where payment was to be made ("To get your vehicle back, you may send payment to Ally at the address at the top of this letter by mail.").  This same notice also satisfies § 12-1021(j) as it notified Burke, at least ten days prior to sale, that the sale of her vehicle was to occur on July 16, 2025, at 9:00 A.M. at "Southern Auto Auction, 161 S Main St, East Windsor, CT 06088-9702." *Id.* at 19.  As the notice complies with all the statutory provisions, Burke's claim under § 12-1021(e) and (j) fails.

Burke, however, argues that Ally was required to "provide a post-disposition explanation that includes: [t]he gross proceeds of the sale; [t]he application of those proceeds to the debt; and [a] calculation of the specific surplus or deficiency balance owed." ECF 8, at 4.  Burke misunderstands the statute.  Such information is required only upon "a private sale of repossessed goods under this section." Com. L. § 12-1021(j)(2).  Burke confirms that the sale of her vehicle was at public auction, not via private sale. *See* ECF 3, at 19 (noting the vehicle was to be sold at "Southern Auto Auction"); *see also Bediako v. Am. Honda Fin. Corp.*, 850 F. Supp. 2d 574, 584

8

(D. Md. 2012) (explaining that "a private sale, by its very nature, is not one that takes place in an open auction-like setting" and that the Maryland "General Assembly did not impose [upon public auction sales] the detailed post-sale disclosure requirements contained in § 12–1021(j)(2) applicable to the case of private sales"), *aff'd*, 537 F. App'x 183 (4th Cir. 2013). As Burke has failed to state a claim under Com. L. § 12-1021(c), (e), and (j), Counts II, III, and IV are dismissed.

### C.   Wrongful Repossession Under the FDCPA and UCC (Count V)

Burke alleges that Ally's "repossession and post-repossession actions" were "commercially unreasonable under the UCC." ECF 3, at 6 ¶ 57. She also alleges that Ally violated § 1692f(6) of the FCDPA "[b]y taking the vehicle without clear authorization and failing to provide meaningful access for redemption." *Id.* ¶ 58. As an initial matter, "[t]he UCC is a 'model code' that 'does not itself have the force of law. . . . Instead, it has been enacted with modifications in the several states.'" *Starr v. VSL Pharms., Inc.*, 509 F. Supp. 3d 417, 444 (D. Md. 2020) (citing *Linear Tech. Corp. v. Micrel, Inc.*, 275 F.3d 1040, 1048 (Fed. Cir. 2001)). "The Maryland General Assembly adopted the UCC and codified it as the 'Maryland Uniform Commercial Code—General Provisions.'" *Silver v. Wells Fargo Bank, N.A.*, Civ. No. MJG-16-382, 2016 WL 6962862, at *2 n.8 (D. Md. Nov. 29, 2016) (quoting Md. Code Ann., Com. L. § 1-101)). Given Burke's pro se status and entitlement to some leniency, the Court will construe her claims as brought under the Maryland UCC.

Burke contends that Ally's alleged "failure to provide clear notice of assignment and the excessive distance for redemption rendered the repossession and post-repossession actions commercially unreasonable under" §§ 9-609(b), 9-610, and 9-623. ECF 3, at 6 ¶ 57. These provisions of the Maryland UCC provide that a secured party may take possession of collateral either "pursuant to judicial process, or . . . without judicial process if it proceeds without breach of the peace," Com. L. § 9-609(b); that "[e]very aspect of a disposition of collateral, including the

9

method, manner, time, place, and other terms, must be commercially reasonable," *id.* § 9-610(b), and that a "[a] debtor . . . may redeem collateral" by tendering "fulfillment of all obligations secured by the collateral" along with "reasonable expenses and attorney's fees," *id.* § 9-623.

Burke's UCC claim centers on whether Ally's acts were commercially reasonable. *See* ECF 3, at 6 ¶ 57. The primary focus of commercial reasonableness is the procedure employed for the sale of collateral. *Gardner v. Ally Fin. Inc.*, 61 A.3d 817, 826 (Md. 2013); *see also* Com. L. § 9-610(b) ("Every aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable."). For example, a sale of collateral may be commercially unreasonable if it is not completed "within a reasonable time" or "in such a manner as to secure the best obtainable price." *Gardner*, 61 A.3d at 824 (quoting *Obrecht v. Crawford*, 2 A.2d 1, 8 (Md. 1938)). Burke states no facts alleging that the disposition of her vehicle was conducted in a commercially unreasonable manner. Rather, Burke takes specific issue with two of Ally's acts: 1) that defendant Ally Financial assigned the loan to Ally Bank without providing "clear documentation of any assignment"; and 2) that "[t]he location for redemption and retrieval of personal property" was a long distance from her residence. ECF 3, at 6 ¶¶ 54, 56. Neither pertain to the disposition of the vehicle or whether such disposition was commercially reasonable. *Cf. Harris v. Bower*, 295 A.2d 870, 874 (Md. 1972) ("If the secured party either sells the collateral in the usual manner in any recognized market therefor or if he sells at the price current in such market at the time of his sale or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold he has sold in a commercially reasonable manner."). Burke's UCC claims fail.

Under Count V, Burke also alleges that Ally "potentially violated FDCPA § 1692f(6), which prohibits a debt collector from taking or threatening repossession when it lacks a present

10

legal right to the property through an enforceable security interest." ECF 3, at 6–7 ¶ 58. "The 'Unfair Practices' section of the FDCPA prohibits debt collectors from using 'unfair or unconscionable means to collect or attempt to collect any debt.'" *Lembach v. Bierman*, 528 F. App'x 297, 303 (4th Cir. 2013) (quoting 15 U.S.C. § 1692f). It prohibits debt collectors from "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if . . . there is no present right to possession of the property claimed as collateral through an enforceable security interest." 15 U.S.C. § 1692f(6)(A). Burke, however, does not allege any facts supporting a plausible inference that Ally did not have an enforceable security interest or right to possession of the property. *See* ECF 3, at 3. To the contrary, the allegations in the complaint demonstrate that Ally did have a right to repossess the vehicle. *Id.* ¶ 4 (alleging Burke "entered into a retail installment sales contract with Defendant . . . to finance the purchase of a 2019 Kia Sorento); at ¶ 5 (alleging Ally sent a notice of intent to repossess "stating repossession could occur after May 21, 2024 for alleged missed payments in March and April 2024"). The evidence that Burke attaches to the complaint supports the same conclusion. *See id.* at 13 ("You are giving a security interest in the motor vehicle being purchased."), at 14 ("Upon your default we may take (repossess) the Vehicle from you."), at 17 ("Your account is in default because you failed to pay $844.20."), at 18 ("Under the terms of your contract, you are responsible for payment of" the "unpaid balance on your account."). As such, Burke has not alleged any facts that, if proven, would establish Ally engaged in any "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Count V is dismissed.

### D.    Violation of the EFTA (Count VI)

Burke alleges that Ally violated the EFTA by making "22 unauthorized electronic fund transfer attempts from Plaintiff['s] PrePaid card account." ECF 3, at 7 ¶ 63. "Section 1693e of the EFTA provides that '[a] preauthorized electronic fund transfer from a consumer's account may

11

be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made.'" *Rantz-Kennedy v. Discover Fin. Servs.*, Civ. No. CCB-12-2853, 2013 WL 3167912, at *2 (D. Md. June 20, 2013) (quoting 15 U.S.C. § 1693e(a)), *aff'd*, 544 F. App'x 183 (4th Cir. 2013). "The EFTA defines 'preauthorized fund transfer' as 'an electronic fund transfer authorized in advance to recur at substantially regular intervals.'" *Id.* (quoting 15 U.S.C. § 1693a(10)). "To qualify as a preauthorized transfer and trigger the requirements of the EFTA, the transfer must be one that is authorized to recur." *Id.* (internal quotation marks omitted) (quoting *In re DirecTV Early Cancellation Litig.*, 738 F. Supp. 2d 1062, 1091 (C.D.Cal. 2010)). Here, while Burke alleges that Ally attempted to debit her account several times without written authorization, there is no allegation related to preauthorization for recurring payments. ECF 3, at 7 ¶ 63. Accordingly, § 1693e of the EFTA does not apply to Burke's claims, and Count VI must be dismissed. *Cf. Rantz-Kennedy*, 2013 WL 3167912, at *2 (dismissing EFTA claim where "the complaint ma[de] no allegation of recurring automatic payments" (citing *Sharkey v. NAC Mktg. Co., LLC*, No. 12 C 4354, 2012 WL 5967409, at *3 (N.D. Ill. Nov. 28, 2012) (holding that § 1693e did not apply to the plaintiff's claim that the defendant debited his account without written authorization, where there was no "preauthorization" for recurring transfers))).

### E.   Invasion of Privacy (Count VII)

Burke alleges an invasion of privacy claim based on her "reasonabl[e] belie[f]" that, because her vehicle was repossessed "[l]ess than 24 hours after arriving in New York City," Ally likely "shared Plaintiff's location and/or financial account details with repossession agents." ECF 3, at 3 ¶ 10. "Intrusion upon seclusion is one of the four recognized privacy claims under Maryland law." *White v. Paradise Mgmt., LLC*, Civ. No. JRR-22-01630, 2022 WL 17668762, at *2 (D. Md. Dec. 14, 2022). "To state a claim for invasion of privacy by intrusion upon seclusion, a plaintiff must allege Defendants have engaged in intentional intrusion upon another's 'solitude, seclusion,

12

private affairs, or concerns in a manner that would be highly offensive to a reasonable person.'" *Id.* (quoting *Gamble v. Fradkin & Weber, P.A.,* 846 F. Supp. 2d 377, 383 (D. Md. 2012)). Burke has concerns that Ally "may have used GPS, telematics, a private investigator, or another method to track the vehicle" without Burke's consent. ECF 3, at 8 ¶ 69. Burke, however, fails to plead facts alleging that Ally engaged in any intentional intrusion, but instead relies on speculation to support this claim. *See, e.g.,* ECF 3, at 7 ¶ 66 ("Defendant *may have* disclosed Plaintiff's private location . . . ."), at 8 ¶ 69 ("Defendant *may have* used GPS . . . to track the vehicle . . . .") (emphases added).

In contrast, Judge Xinis of this Court has previously concluded that allegations involving "[s]ix months of continuous surveillance accomplished through tracking [a plaintiff's] vehicle and a diaper bag" sufficiently pled an intrusion upon seclusion claim. *Demo v. Kirksey,* Civ. No. PX-18-00716, 2018 WL 5994995, at *6 (D. Md. Nov. 15, 2018). In *Demo,* the plaintiff alleged that GPS tracking devices were placed on his vehicle and in his child's diaper bag, which "allowed monitoring 24 hours a day, seven days a week for six continuous months." *Id.* at *2. Indeed, the plaintiff discovered the tracking device in the diaper bag, which allowed the plaintiff's "every move, while he had possession of the diaper bag, [to be] shared." *Id.* But similar facts are not alleged here. Burke does not allege continuous surveillance by Ally, discovery of a GPS monitor, or any other like facts that would support a plausible inference that Ally intruded upon Burke's privacy. Instead, Burke relies on hypotheticals and speculation to support this cause of action. As such, she fails to bring forth sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555.

Even if Burke had properly supported the claim that Ally shared the Kia's location "with repossession agents" in order to track the vehicle while they sought to repossess it, ECF 3, at 7 ¶

13

66, she fails to point the Court to any caselaw establishing that such an act would be "highly offensive to a reasonable person," *Pemberton v. Bethlehem Steel Corp.*, 502 A.2d 1101, 1117 (Md. App. 1986), beyond asserting that she did not "consent" to such tracking, ECF 8, at 6. But the relevant standard is more than lack of consent, as "[t]his tort protects 'the integrity and sanctity of physical areas a person would naturally consider private and off limits to uninvited, unwelcome, prying persons.'" *Parandhamaia v. Smith Farm Holdings, LLC*, Civ. No. SAG-25-02691, 2026 WL 1719367, at *3 (D. Md. June 15, 2026) (quoting *New Summit Assocs. Ltd P'ship v. Nistle*, 533 A.2d 1350, 1354 (Md. App. 1987)). Burke offers no support for the argument that temporarily sharing the location of a vehicle with the individuals tasked with lawfully repossessing it would "be highly offensive to a reasonable person," *id.* (citing *Pemberton*, 502 A.2d at 1116), particularly given Burke's reliance on documentation from Ally reflecting that she was informed that her car's location was the type of information that may be shared with third parties, *see* ECF 3, at 32–33. Indeed, at least one court has concluded that the non-consensual use of GPS to secure property to be lawfully repossessed would not constitute intrusion upon seclusion. *See Peterson v. Aaron's, Inc.*, No. 1:14-CV-1919-TWT, 2017 WL 4390260, at *5 (N.D. Ga. Oct. 3, 2017) (addressing the viability of a claim under Oklahoma law alleging intrusion upon seclusion and commenting that default by a person who leased computers "certainly would have allowed [the lessor] to shut down the computer, or maybe even to use location tracking software in an effort to repossess it"); *cf. Troeckler v. Zeiser*, No. 14-CV-40-SMY-PMF, 2015 WL 1042187, at *3 (S.D. Ill. Mar. 5, 2015) (finding plaintiffs failed to plead an intrusion upon seclusion claim under Illinois law where they did not allege that a "GPS tracking device captured any private activity" or "that the vehicle was driven into a private secluded location in which Plaintiffs would have a reasonable expectation of privacy," and "failed to plead how a passerby on the street or an individual on another vehicle

14

could not capture the same information" that the device captured).   Burke's intrusion upon seclusion claim is thus dismissed.

### F.    Violation of the MCPA (Count VIII)

Burke alleges that Ally engaged in unfair and deceptive trade practices by repossessing her vehicle "without issuing a timely and legally sufficient 10-day" notice; "[r]elying on stale notices and charge-off letters;" "[c]reating a misleading impression regarding the true creditor and assignment;" "[f]ailing to disclose that the account had allegedly been assigned to Ally Bank;" and "[i]mposing unreasonable and punitive harships . . . by storing the repossessed vehicle . . . approximately five hours away." ECF 3, at 8 ¶ 74.   Under the MCPA, any entity doing business in Maryland is prohibited from engaging in any "unfair, abusive, or deceptive trade practices." Com. L. § 13-301.   To state a claim pursuant to the MCPA, Burke must allege facts to show: "(1) an unfair or deceptive practice or misrepresentation; (2) that is relied upon; and (3) causes [her] actual injury." *Durham v. Home Partners Holdings LLC*, Civ. No. LKG-23-03490, 2024 WL 4955279, at *9 (D. Md. Dec. 3, 2024) (citing *Stewart v. Bierman*, 859 F. Supp. 2d 754, 768 (D. Md. 2012)).   "A consumer relies on a misrepresentation when the misrepresentation substantially induces the consumer's choice." *Bryant v. Koppers, Inc.*, 627 F. Supp. 3d 466, 477 (D. Md. 2022), *aff'd*, No. 22-2017, 2023 WL 3053017 (4th Cir. Apr. 24, 2023) (citation omitted).

"The requirement of reliance flows from the MCPA's prescription that the party's injury or loss be the result of the prohibited practice." *Bank of America, N.A. v. Jill P. Mitchell Living Trust*, 822 F. Supp. 2d 505, 533 (D. Md. 2011) (citation modified).   Here, although Burke alleges several of Ally's actions "violated the MCPA," ECF 3, at 9 ¶ 74, she fails to allege that she relied on Ally's conduct in any way. *Cf. Willis v. Green Tree Servicing, LLC*, Civ. No. WMN-14-3748, 2015 WL 1137681, at *5 (D. Md. Mar. 12, 2015) (dismissing MCPA claim where the plaintiff "failed to allege facts to show that he relied on Defendant's misrepresentations or omissions, nor

15

does he explain how Defendant's alleged failures materially impacted his circumstances or conduct"). Accordingly, Burke's MCPA claim fails.

### G. IIED (Count IX)

Finally, Burke alleges that Ally is liable for IIED because Ally "wait[ed] until Plaintiff traveled out of state for a family funeral, and repossess[ed] the vehicle without proper notice or authorization." ECF 3, at 9 ¶ 79. IIED claims "may succeed only when the defendant's conduct was 'so outrageous that it goes beyond all possible bounds of decency, and is regarded as atrocious, and utterly intolerable in a civilized community.'" *Williams v. Wicomico Cnty. Bd. of Educ.*, 836 F. Supp. 2d 387, 399 (D. Md. 2011) (quoting *Borchers v. Hyrchuk*, 727 A.2d 388, 392 (Md. App. 1999)). "Moreover, the outrageous conduct must cause a 'severely disabling emotional response,' such that 'no reasonable man could be expected to endure it.'" *Id.* (quoting *Harris v. Jones*, 380 A.2d 611, 616 (Md. 1977)). IIED claims are rarely upheld. *See Lasater v. Guttmann*, 5 A.3d 79, 90 (Md. App. 2010) ("In the 30 years since the Court of Appeals recognized the tort of IIED, it has upheld such claims only four times."). "As such, '[t]he tort of intentional infliction of emotional distress is rarely viable, and is to be used sparingly and only for opprobrious behavior that includes truly outrageous conduct.'" *Williams*, 836 F. Supp. 2d at 399 (alteration in *Williams*) (citing *Bagwell v. Peninsula Reg'l Med. Ctr.*, 665 A.2d 297, 319 (Md. App. 1995)).

Burke fails to plead that Ally engaged in any extreme or outrageous conduct to support an IIED claim. *Cf. Costin v. Ally Bank Corp.*, No. 7:13-CV-113-BO, 2014 WL 130527, at *2. (E.D.N.C. Jan. 13, 2014) ("[T]he bank repossession of a vehicle after a borrower misses three payments is not 'extreme and outrageous.'"). Moreover, "Maryland courts routinely reject 'conclusory statements of emotional distress' without demonstrably severe injury as insufficient for an IIED claim." *Dean v. Wal-Mart Stores, Inc.*, Civ. No. PX-23-1131, 2024 WL 229559, at *6 (D. Md. Jan. 22, 2024) (quoting *Karn v. PTS of Am.*, LLC, No. GJH-16-3261, 2017 WL

16

4162251, at *5 (D. Md. Sept. 19, 2017)).  Here, Burke asserts without any factual detail that she suffered "[s]evere emotional distress including anxiety, humiliation, mental anguish, and depression." ECF 3, at 9 ¶ 83.  "Broad generalizations of categorical injuries come nowhere close to satisfying the demanding requirements of an IIED claim."  *Dean*, 2024 WL 229559, at *7. While the Court has no doubt that the repossession of the vehicle while Burke was traveling with family to a funeral was a difficult experience, conclusory allegations of injury fail to generate a viable IIED claim.  *Cf. Kelly v. Offit Kurman, P.A.*, Civ. No. CCB-17-3668, 2021 WL 3725379 (D. Md. Aug. 23, 2021) (finding "boilerplate allegations of emotional distress . . . insufficient to state a claim for" IIED), *aff'd*, No. 21-2178, 2023 WL 2570968 (4th Cir. Mar. 20, 2023).  Burke's IIED claim is thus dismissed.

## IV.     CONCLUSION

For the foregoing reasons, Ally's motion to dismiss is GRANTED.

A separate implementing order will issue.

Dated: <u>July 8, 2026</u>

_____/s/_____
Brendan A. Hurson
United States District Judge

17